*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0144p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 05-6610

TRACEY SCOTT ESTEPPE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 05-00014—David L. Bunning, District Judge.

Submitted: February 23, 2007

Decided and Filed: April 23, 2007

Before: SILER and GILMAN, Circuit Judges; ZATKOFF, District Judge.*

_____

**COUNSEL**

**ON BRIEF:** Robert D. Little, LAW OFFICE OF ROBERT LITTLE, Maplewood, New Jersey, for Appellant. John Patrick Grant, ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee.

_____

**OPINION**

_____

RONALD LEE GILMAN, Circuit Judge. Tracey Scott Esteppe pled guilty to a charge of armed bank robbery in May of 2005. Based on his prior convictions for escaping from prison and for burglary, Esteppe's Presentence Report (PSR) concluded that he qualified as a career offender under the Sentencing Guidelines. Esteppe objected to the career-offender sentence enhancement on the ground that his prior escape and burglaries were all related and therefore constituted just one predicate offense. The district court disagreed and sentenced Esteppe to 188 months of imprisonment, the low end of Esteppe's enhanced Sentencing Guidelines range. On appeal, Esteppe reasserts his objection to the career-offender enhancement. He also argues that his sentence was unreasonable because the district court did not properly analyze all of the factors set forth in 18 U.S.C. § 3553(a). For the reasons set forth below, we **AFFIRM** the judgment of the district court.

_____

*The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

# I. BACKGROUND

## A. Factual background

In January of 2005, Esteppe entered the Heritage Bank in Erlanger, Kentucky brandishing a pellet gun. He ordered bank employees to fill a bag with money, and emerged from the bank with $18,000 in cash. Shortly thereafter, Esteppe was arrested and confessed to the crime. Four months later, he pled guilty and was sentenced as a career offender under the United States Sentencing Guidelines. The primary issue raised on appeal is not Esteppe's bank-robbery offense, but rather the relatedness of his prior convictions for the purpose of the Guidelines enhancement for career offenders. We thus review the facts surrounding Esteppe's prior convictions for escaping from prison and burglarizing homes in 1993.

Esteppe was being held in custody in Clark County, Kentucky in 1993, pending his indictment for a series of break-ins that he had committed. But he was temporarily released in early July of that year due to the state's failure to timely indict him. Soon after his release, Esteppe found himself sitting in his mother's car, parked within sight of the Clark County jail. Fearing his impending rearrest and the significant prison time that he might face, Esteppe allegedly began to formulate a plan for breaking out of the facility if he were to be reincarcerated.

Esteppe testified that he devised a rather elaborate scheme that included not simply breaking out of jail, but also a subsequent sequence of events designed to further his escape and transition into a new life under a different identity. He allegedly intended to break out of prison, discard his prison uniform, and steal a vehicle from somewhere in his girlfriend's nearby neighborhood. Esteppe would then travel to his friend Cody Dunn's residence in Lexington, Kentucky.

According to Esteppe, he met with Dunn while on temporary release to discuss this plan and to seek out a former friend of Dunn's from prison named Kenny Amick in Pikeville, Kentucky. Esteppe believed that Amick could supply him with counterfeit identification. But Esteppe subsequently discovered that Amick had moved to South Carolina. Amick's sister Tanya, however, remained in Pikeville. Esteppe's plan thus allegedly called for him to rendezvous with Tanya and then travel with her to South Carolina in search of Kenny Amick. Upon reaching South Carolina, Esteppe explained, he would need to steal another vehicle to use so that "nobody [would] know that I was from Kentucky" and so that he could offer the first stolen vehicle to Kenny. If Kenny would accept the stolen car, Esteppe reasoned, then he "could trust [Kenny] 100%." The final element of Esteppe's plan called for him to obtain counterfeit identification from Kenny and assume a new identity.

By Esteppe's own account, his actual escape conformed to this plan only in part. Soon after his temporary release, Esteppe was rearrested and imprisoned on July 5, 1993. He escaped from the Clark County jail the following morning, after which he stripped off his prison uniform and, clad only in his underwear, proceeded stealthily to his girlfriend's neighborhood. Esteppe hid there until dark, at which point he stole a car in which the owner had left the key. He next proceeded to Lexington to visit with Dunn, who provided him with new clothes and some food.

From Lexington, Esteppe headed to Pikeville to meet Tanya. The car he had stolen, however, overheated and began to break down near Mt. Sterling, Kentucky. In need of a new vehicle, Esteppe decided to burglarize a nearby house where he had noticed that a purse—presumably containing car keys—was sitting on the kitchen table. On the evening of July 9, 1993, Esteppe entered the home, grabbed the purse that in fact contained the owners' car keys, and drove off in their sedan.

Esteppe eventually met up with Tanya in Pikeville, and the pair proceeded approximately 200 miles south to Greenville, South Carolina in search of Kenny. Upon arriving in Greenville,

Esteppe stopped to use the bathroom at a doughnut shop. He emerged to discover that Tanya and the vehicle were gone. Again stranded, Esteppe decided to undertake another burglary in the hope of finding the keys to a vehicle parked on the premises. He broke into a home in Greenville on the evening of July 11, 1993 and once more succeeded in finding a purse that contained the owner's car keys.

Now in possession of a third stolen vehicle, Esteppe decided to give up the search for Kenny in South Carolina and instead returned to Kentucky in search of Tanya and an explanation for her abrupt disappearance. He was ultimately taken back into custody in Pikeville, Kentucky before he was able to relocate Tanya.

**B.       Procedural background**

Esteppe was charged for his 1993 offenses in three separate cases. First, he pled guilty in Clark County, Kentucky to charges relating to the escape and theft that occurred there. He then entered a plea of guilty in Montgomery County, Kentucky for the Mt. Sterling burglary. Finally, he pled guilty to the burglary he committed in Greenville County, South Carolina. According to the PSR, Esteppe was ultimately released on parole in October of 2003.

Regarding the offense in the present appeal, Esteppe pled guilty to armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), in May of 2005. The PSR calculated his Sentencing Guidelines range to be from 188 to 235 months based on his Criminal History Category of VI and his Offense Level of 31. This Offense Level included an eight-point enhancement based on Esteppe's designation as a career offender pursuant to U.S.S.G. § 4B1.1. The enhancement applied because of Esteppe's prior felony convictions for crimes of violence stemming from the 1993 escape and burglaries described above.

Esteppe objected to the application of the career-offender enhancement. He asserted that his escape and subsequent crimes were all related and therefore amounted, at most, to just one predicate crime of violence under the Guidelines. The district court overruled Esteppe's objection, concluding that the 1993 crimes were unrelated and that application of the enhancement was therefore proper. Ultimately, the court sentenced Esteppe to 188 months in prison. Esteppe filed this timely appeal.

## II. ANALYSIS

**A.       Standard of review**

We will not set aside the district court's determination that Esteppe's prior convictions were unrelated unless we conclude that the decision was clearly erroneous. *See United States v. Carson*, 469 F.3d 528, 530 (6th Cir. 2006). A district court's finding is clearly erroneous "when, although there may be some evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Clay*, 346 F.3d 173, 178 (6th Cir. 2003). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.*

Esteppe also challenges the procedural reasonableness of his sentence under 18 U.S.C. § 3553(a). A sentence will be deemed procedurally unreasonable if "the district judge fails to 'consider' the applicable Guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005) (footnote omitted).

**B.        Relatedness of the 1993 convictions**

Esteppe argues that the U.S.S.G. § 4B1.1 career-offender enhancement is inapplicable to him. Section 4B1.1 provides for specific Offense Level increases, as well as an increase to Criminal History Category VI if the defendant meets certain criteria that qualify him as a "career offender." The career-offender enhancement applies if

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).

Esteppe concedes that his armed-bank-robbery conviction in the present case satisfies the first and second of the above enhancement criteria. But he argues that his criminal history does not meet the third requirement because the three prior offenses identified in the PSR as his predicate crimes of violence are all related and thus should count as only one offense for the purpose of § 4B1.1. The offenses in question are Esteppe's convictions for (1) escaping from a Kentucky prison on July 6, 1993, (2) second-degree burglary of a Kentucky home on July 9, 1993, and (3) second-degree burglary of a South Carolina home on July 11, 1993. Esteppe was charged, convicted, and sentenced separately for the three offenses. His sentence for escaping ran consecutively to the two burglary sentences, while the two burglary sentences ran concurrently with each other.

Section 4B1.2 provides definitions for the terms used in § 4B1.1 and helps sharpen the focus of Esteppe's claim. Under § 4B1.2(a)(2), Esteppe's convictions for second-degree burglary of a dwelling expressly qualify as "crimes of violence." Esteppe's conviction for escape similarly constitutes a crime of violence under this court's decision in *United States v. Harris*, 165 F.3d 1062, 1068 (6th Cir. 1999) (holding that an escape from prison is a crime of violence under § 4B1.2(a)(2)). The career-offender enhancement therefore properly applies unless all three of Esteppe's 1993 convictions at issue are related to one another.

Under the Guidelines, "[p]rior sentences imposed in related cases are to be treated as one sentence" for purposes of calculating a defendant's criminal history. U.S.S.G. § 4A1.2(a)(2). The Guidelines application note for that section further explains that

> [p]rior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.

U.S.S.G. § 4A1.2 cmt. n.3. Esteppe's argument focuses solely on the second prong: whether his 1993 convictions were all part of a "common scheme or plan." *See id.* Under this prong, prior crimes might be related if they were "jointly planned" or if the "commission of one entailed the other." *United States v. Irons*, 196 F.3d 634, 639 (6th Cir. 1999). The burden, however, rests on the defendant to establish the relatedness of his prior convictions once the government demonstrates that they otherwise qualify as predicate offenses warranting application of the career-offender enhancement. *See id.* at 637-39.

Esteppe does not argue that the commission of his escape offense necessarily entailed his subsequent burglaries. Instead, he asserts that he jointly planned his escape and subsequent burglaries. To establish joint planning, Esteppe's burden is twofold: he must demonstrate both "the existence of such a scheme or plan" and "the connection between the acts and the plan." *United States v. Cowart*, 90 F.3d 154, 159 (6th Cir. 1996).

The only support for Esteppe's claim that he planned both his escape and his subsequent interstate burglary campaign comes from his own testimony. Esteppe conceded during his sentencing hearing that he had never before articulated the full details of his plan to anyone, and neither Cody Dunn nor Tanya Amick—his alleged confederates—were called to testify. Although this alone is not fatal to his relatedness argument, Esteppe faces the problem that the district court specifically found that his "testimony lacks credibility." The district court noted that "[Esteppe's] escape may have been planned," but it went on to "discredit[] [Esteppe's] testimony when he stated he planned all three crimes prior to his escape."

We afford the district court's credibility determinations regarding witness testimony great deference and must uphold its findings of fact unless they are clearly erroneous. *United States v. Horn*, 355 F.3d 610, 613 (6th Cir. 2004) (applying the clearly-erroneous standard to "the entirety of the district court's determination" that prior convictions were related under the Guidelines); *United States v. Oliver*, 397 F.3d 369, 374 (6th Cir. 2005) (noting, in the context of applying the clear-error standard of review, that where "factual findings rest in large part on credibility determinations, we afford district courts even greater deference"). Because Esteppe presented no evidence apart from his own testimony, we have no basis to overturn the district court's credibility-based determination that Esteppe did not formulate a plan that included both his escape and the two subsequent burglaries.

Our review of Esteppe's testimony, moreover, reveals a defect that is even more significant than the district court's credibility determination: Esteppe does not appear to have ever suggested that he did, in fact, plan either of the burglaries in advance. Nowhere in his testimony describing his master plan did he refer to a burglary. Instead, he stated only that he intended to steal cars in order to further his scheme to establish a new identity.

Esteppe's testimony similarly precludes him from establishing a connection between the events following his escape and any preconceived plan. *See Cowart*, 90 F.3d at 159 (noting that the defendant bears the burden of establishing not only the existence of a plan, but also a connection between his acts and the alleged plan). He actually testified to the contrary, acknowledging that he formulated the intent to commit the burglaries specifically in response to unforeseen developments. First, Esteppe's initial getaway vehicle broke down. This led him to make an impromptu decision to burglarize a Kentucky home two days after his escape in order to obtain a new vehicle. Esteppe similarly decided to commit the second burglary some five days and two hundred miles removed from his initial escape primarily because his accomplice had disappeared with his second stolen vehicle.

Conceiving of Esteppe's plan at a sufficiently high level of generality, of course, helps to alleviate both his credibility problem and the problem of unforeseen, unplanned events. By characterizing his professed "plan" as an intent to escape from prison and establish a new identity while illegally obtaining cars along the way, Esteppe makes his plan seem both more plausible and more consistent with the facts. Such a "general" plan, however, which does not specifically contemplate the offenses actually committed, does not suffice to establish the relatedness of otherwise distinct criminal activities. *See, e.g.*, *United States v. Irons*, 196 F.3d 634, 639 (6th Cir. 1999) (explaining that prior convictions are not related "merely because each was committed with the same purpose or common goal").

Instead, all purportedly related offenses must have been conceived of by the defendant prior to committing the first offense in order to treat all of them as related. *See, e.g.*, *United States v. Martin*, 438 F.3d 621, 638 (6th Cir. 2006) (holding that a series of car-theft convictions were unrelated because the defendant "introduced no evidence that he planned the final three car thefts at the time of the first theft"). We thus find no error in the district court's determination that Esteppe had not planned his burglary offenses prior to escaping from prison.

## C.      Reasonableness

Esteppe also contends that his sentence was unreasonable. He characterizes the district court's sentencing explanation as an "unblinking, script-bound and liturgical 'ritualistic incantation' of [§ 3553(a)]," But his argument proceeds no further. He highlights no specific mitigating factor that the district court failed to take into account, nor does he make any particular point as to why a lower sentence should have been imposed.

Esteppe in fact construes the Sixth Circuit's sentencing law precisely backwards. This court has stated repeatedly that it has "never required the ritual incantation of [the § 3553(a)] factors to affirm a sentence." *United States v. Williams*, 436 F.3d 706, 709 (6th Cir. 2006) (quotation marks omitted). A district court's "script-bound" recitation of all of the factors, however, is obviously not problematic, provided that the court "communicate[s] clearly its rationale for imposing the specific sentence." *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006). Typically, the emphasis in such cases focuses on whether the record reflects that "the district judge considered the defendant's argument and . . . explained the basis for rejecting it." *Id.* As noted above, however, Esteppe raises no argument for why his sentence should have been shorter. The sentencing transcript reveals that the district court addressed all of the pertinent § 3553(a) factors and explained their application in light of Esteppe's serious offense of armed bank robbery and his significant criminal history.

Moreover, the court sentenced Esteppe at the low end of his applicable Guidelines range. Properly calculated within-Guidelines sentences are credited in this circuit with a presumption of reasonableness that Esteppe has failed to rebut. *See Williams*, 436 F.3d at 708. We therefore conclude that Esteppe's sentence was reasonable.

## D.      Other issues

Esteppe asserts in the "Summary of the Argument" portion of his brief that the district court erred in finding him to be a "leader" in the bank robbery and in failing to grant him an Offense Level reduction for acceptance of responsibility. These arguments are puzzling given that leadership was not an issue in Esteppe's solo bank robbery and that Esteppe was in fact granted a reduction for acceptance of responsibility. Because these issues are not further addressed in Esteppe's brief and are not likely related to the case before us, we will not further address them here.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.