NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0630n.06

No. 17-2089

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Dec 19, 2018 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| MARY JANE JOHNS, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:     **BATCHELDER, DONALD, and THAPAR, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge**. This case is about two women, Johns and Westphal, who maintained a secret lesbian relationship for nearly a year. When Westphal attempted to end the relationship, Johns appeared unannounced and uninvited at Westphal's residence. An eight-day car trip ensued, ending when Westphal, finally alone in the car, escaped. Shortly thereafter, Johns was arrested. Westphal alleged that Johns had abducted her at gun point and sexually assaulted her during the trip. Johns claimed Westphal had gone willingly in order to persuade Johns not to expose their secret relationship. Johns was eventually indicted and convicted on—as relevant here—charges of kidnapping. Johns now appeals, claiming as error the district court's evidentiary rulings regarding certain printed-out email documents and the district court's application of a sexual exploitation enhancement to her sentence. Finding no error as to either claim, we **AFFIRM**.

**I.**

The facts of this case tell a salacious tale of star-crossed lovers, heartbreak, abduction, a decade-long disappearance, and she-said-she-said intrigue originating from the now-infamous AOL chatrooms in the early days of the internet. In contrast, the actual legal issues presented in this case are dry, technical, and straightforward.

In the spring of 1999, Laura Westphal of Michigan and Mary Jane Johns of Indiana met in an America Online (AOL) chatroom and began a secret romantic relationship. During this roughly year-long relationship, the two regularly met in person either at a mid-way point between their residences, at Westphal's parents' house, or at Westphal's residence. According to both parties, the relationship that grew between them was "serious," "impactful," "meaningful," and "an emotional experience." This was Westphal's first same-sex relationship and for its duration Westphal either lied about the nature of her relationship with Johns or kept it a secret from family and friends.

In the spring of 2000, Westphal ended the relationship. On May 11, 2000, Johns drove from Indiana to Westphal's parents' house outside of Detroit and waited for Westphal to come home. But Westphal, upon arriving home and finding Johns there, was afraid that Johns would reveal the secret romantic nature of their relationship. In order to diffuse the situation, Westphal suggested the two go for a drive to McDonald's to chat. Once the two got into Westphal's vehicle, Johns pulled out a firearm and instructed Westphal to drive west. The two drove west to Iowa and then back to Michigan over the course of eight days, staying in roadside hotels most nights.

The foregoing facts were not disputed by the parties. Rather, the parties contest what happened during the road trip. Westphal alleged that at all times Johns held her captive under threat of a pointed gun and sexually assaulted her nearly every evening. Johns claimed that she

pointed the gun only at herself and threatened to commit suicide. Johns claimed Westphal's presence was voluntary and that Westphal's motivation for going on the trip was to go to whatever lengths necessary both to convince Johns not to reveal their secret romantic relationship and to prevent Johns from committing suicide.

On May 19, 2000, while Johns was checking into a new hotel, Westphal drove the car to a local police station and reported that Johns had kidnapped her. The FBI arrested Johns and she was indicted on charges of kidnapping, in violation of 18 U.S.C. § 1201(a)(1), and use of a firearm during and in relation to the commission of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A), and detained pending trial. On July 6, 2000, Johns was released to a halfway house but absconded and did not appear for trial. Johns disappeared and sixteen years later, in March 2016, was discovered by the FBI in Wisconsin. The government brought a superseding indictment charging her with kidnapping under 18 U.S.C. § 1201(a)(1), use of a firearm during and in relation to the commission a crime of violence under 18 U.S.C. § 924 (c)(1)(A), and failure to appear after pre-trial release under 18 U.S.C. § 3146(a)(1).

Prior to trial, Johns listed as exhibits 269 printed-out electronic communications between Johns and Westphal and emails that Johns had sent to herself. Many of the latter emails included copied and pasted AOL Instant Messenger conversations purportedly between Johns and Westphal. The email exhibits produced by Johns had been printed directly from a personal computer by an unidentified person in preparation for Johns' original trial in 2000 prior to Johns' disappearance. The government attempted to subpoena the records directly from AOL but discovered that AOL no longer retained them.

The government moved in limine to exclude all of these exhibits, arguing that: 1) the emails were not relevant under Federal Rule of Evidence 401, 2) they constituted hearsay under Federal

Rule of Evidence 802, 3) their probative value was substantially outweighed by unfair prejudice under Federal Rule of Evidence 403, and 4) it was impossible to prove their authenticity. The authenticity issue was raised as to both the content of the emails and the production of the printed-out duplicates. The government pointed out that on occasion Johns had logged into Westphal's account and impersonated her, calling into question the authenticity of the content of the original emails. The government also challenged the production of emails, arguing there was no way to determine if the emails and the copied-and-pasted messenger conversations had been altered since they did not come from AOL directly, thus calling into question the authenticity of the documents.

Johns asserted that the relevance and probative value of the emails went to Johns' primary defense that Westphal repeatedly lied about their relationship and had a history of going to "great lengths" to prevent discovery of the real nature of the relationship, evidence tending to prove that Westphal voluntarily accompanied Johns on the 8-day road trip. Johns addressed the authenticity of the content of the originals, claiming the documents satisfied the burden under Federal Rule of Evidence 901 and that any remaining doubt should be a question of weight for the jury, not admissibility for the court. Johns did not address the question of authenticity relating to the production of the emails.[1] As to the hearsay objection, Johns argued that the admissibility of the emails might depend on their usage and that it should be determined at trial.

The district court issued a written opinion on the morning of the trial granting in part and denying in part the motion in limine. The court held that the majority of the emails were relevant and probative of the central issue in the case and admissible under Federal Rules of Evidence 401 and 403; the court granted the motion as to a few emails with graphic sexual exchanges that did not address the case's salient issue. The court denied the hearsay challenge under Federal Rule of

---

[1] The government added the authenticity theory in its Reply to Johns's Response to the motion in limine, which explains why Johns did not address the authenticity challenge in her filings.

Evidence 802, deciding to rule on a case-by-case basis as the emails were used during cross-examination. Expressing concerns regarding both the content and production of the emails, the court viewed the government's authentication challenges as best understood as arising under Federal Rule of Evidence 901(a) and a best-evidence challenge under Federal Rules of Evidence 1001-1004. The district court acknowledged that the records could be used for purposes of impeachment, but required Johns to provide more evidence to lay the foundation for a finding of authenticity as to those records. Johns provided nothing further to authenticate the documents nor did she attempt to admit them at trial, although she did use some of them for impeachment.

The jury found Johns guilty on all three counts. The Pre-sentence Investigation Report recommended applying an enhancement under USSG § 2A4.1(b)(5) for sexual exploitation. At the sentencing hearing, Johns challenged the sexual exploitation enhancement because there was no indictment, charge, or finding by the jury of sexual assault. The district court stated that it found the "general credibility of the complaining witness high and believable," and thus found by a preponderance of the evidence that sexual exploitation occurred during the abduction and applied the enhancement.

Johns raises two claims on appeal. First, Johns argues that the district court misapplied the rules of evidence and abused its discretion by excluding the email exhibits. Second, she claims that the district court committed clear error by finding by a preponderance of the evidence that Johns sexually exploited Westphal.

## II.

### A.

We generally review evidentiary decisions of the district court for abuse of discretion. *McGowan v. Cooper Indus. Inc.*, 863 F.2d 1266, 1271 (6th Cir. 1988). However, the government

argues that because Johns never tried to enter the emails as evidence during trial and the district court did not offer a definitive ruling on the motion to exclude them, Johns was required to make an offer of proof in order to preserve the issue on appeal, which Johns did not do. The government contends that this issue was therefore forfeited pursuant to Federal Rules of Evidence 103(a)(2) and 103(b) and the plain error standard should apply. "A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and . . . [the] party informs the court of its substance by an offer of proof . . . " Fed. R. Evid. 103(a)(2). "Once the court rules definitively on the record – either before or at trial – a party need not . . . [make an] offer of proof to preserve a claim of error for appeal." Fed. R. Evid. 103(b).

Johns argues she did not try to admit the emails as evidence at trial because the court had already definitively ruled on the motion in limine regarding the introduction of the emails as substance evidence and thus she was not required to make an offer of proof under Federal Rule of Evidence 103(b).

We need not resolve today the question of whether a district court's invitation to a party to provide more evidence aimed at persuading the court to change its ruling on a motion in limine makes that ruling "qualified or conditional" and thus not "definitive," because doing so would in no way impact our final disposition. *See*, *United States v. Poulsen*, 655 F.3d 492, 511 (6th Cir. 2011). We think the record is less than clear whether the district court's ruling on admissibility for substantive purposes was "definitive," and will not hold that Johns should have understood it either. We conclude that—on this record—Johns was not required to make an offer of proof under Federal Rule of Evidence 103(b) and the issue was preserved for appeal. We will therefore review for abuse of discretion the district court's ruling on the motion to exclude the emails.

**B.**

The issue before us is thus whether the district court abused its discretion in the ruling excluding the email evidence for substantive purposes. We will find an abuse of discretion in the evidentiary ruling of the district court only when the ruling is erroneous and results in substantial injustice to the aggrieved party. *McGowan*, 863 F.2d at 1271 ("A trial court is accorded wide discretion in determining the admissibility of evidence."). We find no abuse of discretion here.

The district court ruling excluded some emails both as substantive evidence and for impeachment purposes under Federal Rules of Evidence 401 and 403. Johns does not challenge that ruling. Rather, Johns challenges the exclusion of the majority of the email exhibits for substantive purposes based upon the government's authentication and best-evidence challenges under Federal Rules of Evidence 901 and 1001-1004.

Although a question about Johns's having password access to Westphal's account called into doubt the *content* of the original emails, it was not the content of those emails that the district court focused on but the *production* of the printed-out emails Johns sought to introduce. As the district court stated, "[t]he Court's concerns are based in the Government's claims that the messages were not collected directly from AOL . . . " The proposed exhibits had been printed off sixteen years earlier from an unknown computer by an unidentified person and some of the emails included copied and pasted AOL Instant Messenger conversations between Johns and Westphal. The district court went on to state "[c]urrently, the Court does not know whether the printed messages were printed directly from AOL in a view-only mode that prohibited alterations, or whether the messages were copied from AOL and pasted into another program, like Microsoft Word, enabling a user to edit the text of the message." Within the ruling, as well as at the hearing on the motion, the district court invited Johns to produce more evidence that would "lay the

foundation" such that the emails would "survive the Government's authenticity challenge." Johns made no attempt to introduce foundational evidence nor did she clarify the nature of the email print-outs as originals, duplicates, or other secondary evidence.

On appeal, Johns argues that the proposed email print-outs are originals under Federal Rule of Evidence 1002, and in the alternative, they are secondary evidence admissible under Federal Rule of Evidence 1004 as an exception to the requirements of 1002. An "original writing . . . is required in order to prove its contents unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. "For electronically stored information, 'original' means any printout—or other output readable by sight—if it accurately reflects the information." Fed. R. Evid. 1001(d). While the print-outs offered certainly purport to accurately reflect the information, and Johns insists that "there is no question that these emails were 'print-outs' of the original email messages," that is what the entire authentication challenge is about—whether the documents presented were in fact altered and thus not reflective of the original information. Because neither AOL nor the parties currently have access to the underlying electronic records, the accuracy of these printouts cannot be demonstrated, and they cannot be originals for the purposes of electronic information.

Furthermore, any claims of admissibility under Federal Rule of Evidence 1004 as secondary evidence of an original writing or under Federal Rule of Evidence 1003 as a duplicate run into the same problem—the authenticity of the alternate production. As the Advisory Committee Note for Federal Rule of Evidence 1003 on duplicates states, "a counterpart serves equally as well as the original, if the counterpart is the product of a method which insures accuracy and genuineness." Fed. R. Evid. 1003 Ad. Comm. Notes (1972). The same would apply to a Rule 1004 secondary evidence exception claim. It is this aspect of the authentication challenge that Johns fails to address. The government did not challenge Johns's claim that Westphal and Johns

communicated using the identified AOL email addresses and screen names or that someone printed emails from those addresses. Rather, both the government and the district court were concerned with the source, method, and accuracy of the printed emails—because of the opportunity and motive to alter them during their production. To date, Johns has still not offered an explanation, evidence, or testimony regarding the production of the emails printed out so many years earlier. On this basis alone we find that the district court did not abuse its discretion.

Johns also argues that the emails' "distinctive characteristics" and the witness testimony to the existence of the email accounts satisfy the low bar Federal Rule of Evidence 901 requires for identification and authentication of evidence. Here, Johns' arguments go to the authentication of the content and senders of the emails, rather than the production of the evidence which Johns admitted was the "primary concern" of the district court's decision. Had the emails themselves been sourced from AOL then these arguments would be relevant to a general 901 authentication inquiry.

The fact of the matter is that the district court was presented with printed documents from sixteen years earlier, from an unknown computer, via an unknown program, by an unidentified person who had opportunity to alter them, with no evidence or testimony offered to account for how the documents were produced. Johns had opportunity to address the district court's concerns at trial but did not.[2] Tellingly, Johns does not directly address those concerns on appeal.

### III.

Johns also raises the issue of whether, in the absence of a jury finding or party admission, a district court commits clear error by relying on testimonial evidence alone for a judicial fact-

---

[2] We recognize that Johns received the written ruling the morning of trial. However, Johns had notice of the argument from the government's Reply Brief and heard the district court's concerns during the hearing on the motion to exclude prior to the issuance of the ruling. The trial lasted over a week. We are satisfied that Johns had sufficient opportunity to address the issue such that she was not prejudiced by a timing obstacle.

finding by a preponderance of the evidence in the application of a sentencing enhancement. We hold that it does not.

At the sentencing hearing, the district court heard arguments from both parties on the Pre-sentence Investigation Report's recommendation for a sexual exploitation enhancement to Johns' sentence on the kidnapping charge. Ultimately, the district court found, as the jury had, that Westphal's general credibility was "high and believable," and that it found by a preponderance of the evidence that Johns sexually exploited Westphal during the abduction.

Johns argues on appeal, as she did during the sentencing hearing, that she was not indicted, charged, nor found by the jury to have sexually assaulted Westphal, nor has she admitted doing so. The only claim of sexual misconduct came from Westphal during testimony, which was unsupported by physical evidence or other witnesses, and was countered by defense testimony. Johns argues that "[testimonial evidence] alone is not sufficient to support a three-level enhancement," and that it would be clear error under these circumstances for a court to find by a preponderance of evidence that sexual misconduct occurred. In support of this claim, Johns cites an unpublished 4th Circuit opinion[3] that seemingly suggests that *United States v. Booker*, 543 U.S. 220 (2005) eliminated judicial fact-finding in sentencing entirely. But this is not the law. As we have said, "*Booker* did not eliminate judicial fact-finding." *United States v. Stone*, 432 F.3d. 651, 654-55 (6th Cir. 2005). In fact, at the sentencing hearing, Johns's counsel admitted as much, agreeing that the district court should use the preponderance of the evidence standard in determining whether to apply the enhancement. And the fact that a defense witness cast doubt on Westphal's credibility goes to the weight and persuasive effect of Westphal's testimony, not its legal sufficiency for judicial fact finding.

---

[3] *United States v. Boggs*, 170 F. App'x 841, 842 (4th Cir. 2006). This was one of the cases the Supreme Court vacated and remanded for recalculation of sentencing in the aftermath of *Booker*.

The district court found by a preponderance of the evidence that Johns had sexually exploited Westphal. We review for clear error district court findings of fact. *United States v. Johnson*, 732 F.3d 577, 580 (6th Cir. 2013). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Clay*, 346 F.3d 173, 178 (6th Cir. 2003). "We afford the district court's credibility determinations regarding witness testimony great deference . . . ." *United States v. Esteppe*, 483 F.3d 447, 452 (6th Cir. 2007). We have held that, "[A] district court's application of the provisions of the Sentencing Guidelines to the facts should be treated deferentially . . . " *United States v. Simmerman*, 850 F.3d 829, 832 (6th Cir. 2017). The district court did not clearly err in this finding of fact.

The three-level enhancement that the court applied to the kidnapping charge resulted in an advisory guideline range of 97 to 121 months. However, even with the sexual exploitation enhancement applied, the court found mitigating factors and varied downward by 13 months, arriving at a sentence of 80 months on the kidnapping conviction. We find no abuse of discretion here.

**IV.**

For the foregoing reasons, we **AFFIRM** the judgment of the district court.