NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0024n.06

No. 25-5024

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jan 13, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
|  | ) | DISTRICT OF KENTUCKY |
| DAVAUGHN ELLIS WEST, | ) | |
| Defendant-Appellant. | ) | OPINION |
|  | ) | |

Before: BATCHELDER, CLAY, and RITZ, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Davaughn Ellis West was sentenced to 132 months in prison and 4 years of supervised release after he pleaded guilty to one count of distribution of 40 grams or more of fentanyl, in violation of 21 U.S.C. § 841(a)(1). On appeal, Defendant argues that his sentence is unreasonable. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.    BACKGROUND

### A.  Factual Background

Between approximately February and June 2022, Defendant Davaughn Ellis West conspired with Meagan Brittany Mounce and Anthony Trevell Norman to distribute oxycodone pills, methamphetamine, and fentanyl. Defendant and Norman worked together to acquire methamphetamine and fentanyl from multiple drug suppliers, and they provided those drugs to dealers in Pulaski and Madison Counties, Kentucky. Mounce was one such dealer.

From February to December 2022, the Federal Bureau of Investigation ("FBI") utilized a cooperating source ("CS") to purchase various quantities of oxycodone, fentanyl, and methamphetamine from Mounce, Norman, and Defendant. The CS initially purchased illegal drugs from Mounce. During an April 26, 2022 transaction with Mounce, the CS met Defendant and Norman when they delivered two ounces of fentanyl for the CS. Then, on May 10, 2022, the FBI used the CS to purchase 445.8 grams of methamphetamine from Defendant. In total, Defendant delivered 9,057.75 kilograms of converted drug weight to the CS.

### B. Procedural History

On February 22, 2024, a federal grand jury returned an indictment against Defendant. The indictment charged Defendant with one count of attempt and conspiracy, two counts of knowingly or intentionally manufacturing, distributing, or dispensing, or possessing with intent to manufacture, distribute, or dispense, a controlled substance, and one count of aiding and abetting, in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2, respectively.

Defendant signed a plea agreement and pleaded guilty to one count in violation of 21 U.S.C. § 841(a)(1). In exchange for his plea, the government agreed to move to dismiss the other counts against Defendant at his sentencing hearing.

The United States probation department then prepared a pre-sentence report ("PSR"). The PSR calculated Defendant's base offense level at 32 with a three level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). With a criminal history category of V and total offense level of 29, Defendant's proposed Guidelines range was 140 to 175 months.

Defendant raised several objections to the PSR. First, Defendant claimed his base offense level was incorrect because in the plea agreement, the parties did not agree to a quantity of narcotics determining the Guidelines calculations, and there was no evidence that any drugs were

transacted on May 10, 2022. Second, Defendant claimed that the May 10, 2022 transaction was not relevant conduct under U.S.S.G § 1B1.3(a)(2) to the § 841(a)(1) violation to which he had pleaded guilty. Third, as a result of his first two objections, Defendant claimed that his base offense level should be 24 with a Guidelines range of 70 to 87 months. Fourth, Defendant averred that a downward departure under U.S.S.G. § 4A1.3(b)(1) was warranted because half of his criminal history points came from prior possession of marijuana convictions.

The district court held Defendant's sentencing hearing on January 3, 2025. At the hearing, the court allowed the government to present witnesses and evidence in response to Defendant's objections. The government first presented the CS as a witness to testify as to his controlled drug transactions with Defendant, Mounce, and Norman. On direct examination and while referencing video footage of the CS's interactions with Defendant, the CS testified that he had purchased one pound of methamphetamine from Defendant for $3,500 on May 10, 2022. In total, the transaction took approximately four to five hours to complete since Defendant left the CS in order to source the drugs. The CS also stated that he and Defendant had discussed the methamphetamine sale and $3,500 sale price during the April 26, 2022 drug transaction for two ounces of fentanyl.

On cross-examination, Defendant's attorney questioned the CS's sobriety during the two drug transactions and his motivations for assisting the FBI with the investigation. The CS admitted that he was a "[l]ittle bit" high during the April 26, 2022 controlled buy from taking a "nerve pill." Sentencing Hr'g Tr., R. 118, PageID #513. He also stated that he was previously addicted to Suboxone for approximately three years prior to the transactions, but was no longer addicted when he was approached by the FBI to assist with the controlled buys. The CS stated that during the May 10, 2022 controlled buy, he was on Xanax because he was nervous about the transaction. When asked why he assisted the FBI, the CS cited the need to support his two children.

The government then presented FBI Special Agent Mike McLaughlin for examination. Agent McLaughlin testified as to his supervisory role over the April 26, 2022 and May 10, 2022 controlled buys, as well as what the CS relayed to him about the CS's conversations with Defendant about the drug transactions. Agent McLaughlin noted that the recording device used by the CS during the May 10, 2022 transaction "ran out of battery and . . . recording space" because the deal took so long. *Id.* at PageID #532–33. Thus, the video recording did not capture the part of the transaction when the CS actually received the drugs. The agent also testified, however, that the CS provided him the drugs from the May 10, 2022 transaction, which turned out to be 445.8 grams of methamphetamine after further laboratory testing.

The district court then heard argument on Defendant's first objection. The court found the CS's testimony to be credible; although the CS admitted to being on Xanax during the May 10, 2022 controlled buy, the court noted how "his testimony [was] not contradicted in any way" by the portions of the transaction the video recording captured. *Id.* at PageID #549. The court also noted that Agent McLaughlin, who it presumed was "experience[d] dealing with people who are compromised," "[s]aw no indication" that the CS was compromised. *Id.* Thus, the court credited the CS's testimony and the video tape recording to conclude that Defendant "was the author and completer of [the May 10, 2022] transaction." *Id.* at PageID #550. The court therefore overruled Defendant's first objection by concluding that the evidence supported the government's claim that the transaction "involved a pound of crystal [meth] for $3,500." *Id.*

The district court next considered Defendant's second objection. It disagreed with Defendant's claim that U.S.S.G. § 1B1.3(a)(2) "only applies when there are multiple offenses of conviction." *Id.* at PageID #564. The court noted that the text of § 1B1.3(a)(2) was "clear and not ambiguous" since "[n]othing in the construction of . . . 1B1.3 or the general approach to the

guideline suggest[ed]" to the court that § 1B1.3(a)(2) "only applies when there are multiple offenses of conviction." *Id.* The court further explained that § 1B1.3(a)(2)'s reference to "offenses of a character [for which § 3D1.2(d) would require grouping of multiple counts]" was simply a standard for the type of offense that would constitute "expanded relevant conduct." *Id.* at PageID #564–65. Accordingly, the district court overruled Defendant's second and third objections.

The government then moved to dismiss Counts 1 and 5 of the indictment, in accordance with the plea agreement, and the district court granted the motion. The district court proceeded to sentence Defendant on his sole § 841(a)(1) offense under Count 4. It calculated Defendant's offense level and criminal history category in accordance with the PSR and determined Defendant's Guidelines range to be 140 to 175 months.

At this point in the hearing, the district court heard argument on Defendant's fourth objection. It determined that Defendant's prior October 11, 2023 state conviction for simple possession of 4.4 grams of marijuana was likely not trafficking. Accordingly, the court departed under § 4A1.3 and modified Defendant's criminal history category from a V to a IV, thereby reducing his Guidelines range to 121 to 151 months. The court declined to find that Defendant's other two prior drug offenses were only for personal use, citing the quantity of marijuana in Defendant's possession at the time of the drug arrests. The district court also noted that it would not depart further based on Defendant's age at the time of his prior state drug offenses. According to the court, Defendant's "sort of continuing involvement with like crimes through the years . . . thin[ned] the age argument a bit." *Id.* at PageID #583.

With the criminal history departure in mind, the court considered the 18 U.S.C. § 3553(a) factors it deemed relevant to sentence Defendant. The district court ultimately sentenced

Defendant to 132 months imprisonment and 4 years of supervised release. Defendant's timely appeal followed.

## II. DISCUSSION

### A. Standard of Review

We generally review sentences imposed following conviction under the abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007). Under this deferential standard, "we may overturn a sentence only if it is procedurally or substantively unreasonable." *United States v. Kontrol*, 554 F.3d 1089, 1092 (6th Cir. 2009).

"Whether a district court properly applied a sentencing enhancement is a matter of procedural reasonableness." *United States v. Taylor*, 85 F.4th 386, 388 (6th Cir. 2023). Where a district court's determination of "relevant conduct" under U.S.S.G. § 1B1.3(a)(2) "involves the application of law to fact, we review the district court's determination de novo." *United States v. Shafer*, 199 F.3d 826, 830 (6th Cir. 1999).

### B. Analysis

#### 1. The Sentence's Procedural Reasonableness

A sentence is procedurally reasonable if a district court "explain[s] its reasoning to a sufficient degree to allow for meaningful appellate review." *United States v. Zobel*, 696 F.3d 558, 566 (6th Cir. 2012) (quoting *United States v. Brogdon*, 503 F.3d 555, 559 (6th Cir. 2007)). "A district court commits reversible procedural error by 'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately

explain the chosen sentence—including an explanation for any deviation from the Guidelines range.'" *Id.* (quoting *Gall*, 552 U.S. at 51).

Defendant raises four procedural reasonableness challenges to his sentence. First, Defendant challenges the sufficiency of the evidence underlying the district court's determination that Defendant and not Norman provided the CS with the methamphetamine on May 10, 2022. Second, Defendant avers that the unindicted May 10, 2022 transaction was not "relevant conduct" under § 1B1.3(a)(2). Third, Defendant argues that the district court should have departed further and removed his other three prior state drug possession charges from his criminal history score calculation, which would have placed him in a criminal history category III. Fourth, Defendant claims that the district court did not consider Defendant's request for a departure under U.S.S.G. § 5H1.1 or adequately explain its reasoning for rejecting the request. For the reasons discussed below, none of Defendant's arguments have merit.

### a. *Sufficiency of Evidence Underlying the District Court's Drug Quantity Calculation*

When the precise quantity of drugs attributable to a defendant is uncertain, "a district court should 'err on the side of caution' and 'only hold the defendant accountable for a specific quantity for which he is more likely than not actually responsible.'" *United States v. Mosley*, 53 F.4th 947, 962 (6th Cir. 2022) (quoting *United States v. Johnson*, 732 F.3d 577, 581 (6th Cir. 2013)). An estimate is sufficient when it is supported by a preponderance of the evidence. *Id.*

"The district court's estimate may be based upon physical evidence (such as seized drugs) or testimonial evidence." *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008). "We 'afford the district court's credibility determinations regarding witness testimony great deference.'" *Id.* (quoting *United States v. Esteppe*, 483 F.3d 447, 452 (6th Cir. 2007)). We review the district court's drug quantity finding for clear error and will uphold it "if it is supported by competent

evidence in the record." *Id.* "Clear error will not be found where two permissible views of the evidence exist." *Id.*

It is uncontroverted that Defendant provided 2 ounces of fentanyl to the CS during the April 26, 2022 controlled buy and that the CS received 445.8 grams of methamphetamine during the May 10, 2022 controlled buy. Defendant merely contests whether there was sufficient evidence to support the district court's finding that Defendant and not Norman was responsible for providing the 445.8 grams of methamphetamine during the May 10, 2022 controlled buy. To support his challenge, Defendant assails the credibility of the CS's testimony at the sentencing hearing. Defendant claims that the district court erred in relying on the CS's "shaky, at best, testimony" because the CS had a drug addiction, continued to use drugs, had poor memory, and "appeared evasive and defensive when asked about why he was assisting law enforcement in the controlled deals." Defendant's Br., at 14–15. Agent McLaughlin's testimony and the video recording evidence cannot corroborate the CS's testimony, according to Defendant, because Agent McLaughlin never observed the transaction and the video recording device failed to show who actually handed the CS the methamphetamine.

We disagree with Defendant. The CS testified that Defendant gave him the pound of methamphetamine on May 10, 2022. That quantity of methamphetamine was purchased for $3,500, an amount and price Defendant and the CS had agreed to during the prior April 26, 2022 fentanyl controlled buy. Though the CS admitted he was high on a nerve pill at the time of the fentanyl sale and high on Xanax at the time of the methamphetamine sale, his testimony was consistent with what the video recording captured of both sales. We therefore see no reason from the record to doubt the district court's determination that the CS's testimony was sufficiently reliable for the court to conclude that Defendant was responsible for the 445.8 grams of

methamphetamine involved in the May 10, 2022 controlled buy.  The CS's testimony, the video recording evidence, and Agent McLaughlin's testimony, show by a preponderance of the evidence that Defendant sold the methamphetamine to the CS on May 10, 2022.  Accordingly, the district court did not commit clear error when it found Defendant responsible for the methamphetamine.

### b.  Relevant Conduct Under U.S.S.G. § 1B1.3

Defendant next argues that the May 10, 2022 controlled buy was not unindicted "relevant conduct" under § 1B1.3(a)(2) that could be included in the district court's base offense level calculation.  The government, however, claims that Defendant either waived this argument before the district court or invited the error.  In either instance, the government contends that we cannot consider Defendant's argument.

"Waiver is the 'intentional relinquishment or abandonment of a known right.'"  *Walker v. United States*, 134 F.4th 437, 440 (6th Cir. 2025) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).  Generally, "a litigant waives a legal claim by initially raising the claim and then explicitly abandoning it later."  *Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011 (6th Cir. 2022).  We cannot review a right "a defendant . . . knows of and actively abandons."  *United States v. Montgomery*, 998 F.3d 693, 697 (6th Cir. 2021).

We have recently described waiver as being on a "continuum[:]" "each additional indication that a party intentionally abandoned an argument rather than merely overlooked it . . . [pushes] the party's conduct . . . further along that continuum toward[s] waiver."  *Walker*, 134 F.4th at 441.  "A party's conduct slides toward waiver where there is evidence of a 'deliberate decision to actively abandon an issue.'"  *United States v. Smith*, No. 24-1797, 2025 WL 3089937, at *2 (6th Cir. Nov. 5, 2025) (quoting *Walker*, 134 F.4th at 440).

Defendant's counsel expressly and explicitly abandoned his "relevant conduct" argument before the district court. During the sentencing hearing, the district court explained its rationale for finding the May 10, 2022 controlled buy to be relevant conduct to the April 26, 2022 charged conduct. The court then asked Defendant's counsel if "he ha[d] an argument [he] want[ed] to put on the record about why [the May 10, 2022 controlled buy] would not be the same course of conduct or common scheme or plan" as the indicted April 26, 2022 controlled buy. Sentencing Hr'g Tr., R. 118, PageID #567. The dialogue between Defendant's counsel and the district court proceeded as follows:

> MR. LYONS: I thought about it, Your Honor, and based on the guidance from the case law, I've got similar type transactions, we've got the same parties involved, we've got too many similarities for me to make any kind of real effective argument about common plan or scheme, course of conduct. That's kind of the reason I went direction the I went.
>
> THE COURT: Okay.
>
> MR. LYONS: So the answer is no.

*Id.* at PageID #567–68.

Defense counsel's admission is a waiver under our precedents. *See United States v. Aparco–Centeno*, 280 F.3d 1084, 1088 (6th Cir. 2002) ("An attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course." (quoting *United States v. Sloman*, 909 F.2d 176, 182 (6th Cir. 1990)); *cf. United States v. Hall*, 373 F. App'x 588, 592 (6th Cir. 2010) (finding waiver of argument that defendant was not an armed career criminal where defense counsel had "expressly conceded" the Armed Career Criminal Act's applicability to defendant at sentencing by stating "I recognize my client has the criminal history that he does, and I certainly understand that he's a, pursuant to statute, an armed career criminal," and admitting that his client was subject to a "'15[-]year[] minimum mandatory'

sentence"). By admitting that he could not effectively argue against the district court's finding that the May 10, 2022 controlled buy was relevant conduct to the April 26, 2022 controlled buy, Defendant's counsel explicitly waived this argument. We therefore decline to review Defendant's "relevant conduct" argument on appeal. *See Montgomery*, 998 F.3d at 698.

### c. *Departure Under U.S.S.G. § 4A1.3*

Next, Defendant appeals the district court's refusal to grant his request for a downward departure under U.S.S.G. § 4A1.3 on all of his three prior state convictions for simple possession of marijuana, which would have reduced his criminal history score to a III.

"[W]e [typically] do not review a district court's decision not to depart downward unless the record shows that the district court was unaware of, or did not understand, its discretion to make such a departure." *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008). While we do not require a district court to explicitly acknowledge its discretion to make a departure, *see id.*, the record is clear that the district court knew it had discretion to grant Defendant's request. *See* Sentencing Hr'g Tr., R. 118, at PageID #579 ("I appreciate the argument and the departure request. It is permissive, so certainly I recognize the Court has the power to do it. There is some discretion there."). This acknowledgement was more than enough under our precedents. *See, e.g.*, *Santillana*, 540 F.3d at 432 (concluding the district court was aware of its authority to depart downwards when the court stated it could "under certain circumstances . . . impose a sentence below a statutory minimum"). Accordingly, the district court did not abuse its discretion when it considered each of Defendant's three prior state simple possession of marijuana convictions and concluded that only one of the convictions warranted a departure under U.S.S.G. § 4A1.3.

### d. **Departure Under U.S.S.G. § 5H1.1**

Finally, Defendant argues that the district court failed to consider his request for a departure pursuant to U.S.S.G. § 5H1.1 or explain why it rejected his request. To be sure, a district court commits procedural error "when 'a defendant raises a particular argument in seeking a lower sentence'" and "the record [does not] reflect that the district court considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Jones*, 489 F.3d 243, 251 (6th Cir. 2007) (quoting *United States v. Richardson*, 437 F.3d 550, 553–54 (6th Cir. 2006)). Defendant avers that he requested this departure due to the Defendant's age at the time of his first state conviction, but the district court simply stated that "[it] was not going to depart based on age." Sentencing Hr'g Tr., R. 118, PageID #583. But this is an incomplete representation of the district court's reasoning. Indeed, at the sentencing hearing the district court explained:

> THE COURT: Well, I see the power to consider age according to the policy statement. I'm not going to depart based on age, but I'll certainly hear the argument as part of 3553. If it were isolated at that young age, I would be a little more drawn to the persuasiveness of it.
>
> But he's had sort of continuing involvement with like crimes through the years which, to me, thins the age argument a bit. Okay. That's where we are on departures.

*Id.* The record thus demonstrates that the district court considered Defendant's departure request and explained why it declined to depart pursuant to § 5H1.1. In doing so, the district court did not abuse its discretion.

## 2. **The Sentence's Substantive Reasonableness**

Defendant then challenges the substantive reasonableness of his within-Guidelines range 132 month sentence. A sentence is substantively reasonable if it is "proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than

necessary, to comply with the purposes of § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (citation modified). But, "[a] sentence is substantively unreasonable if the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Mahbub*, 818 F.3d 213, 232 (6th Cir. 2016) (quoting *United States v. Camiscione*, 591 F.3d 823, 832 (6th Cir. 2010)).

"The starting point for substantive reasonableness review is the Guidelines range, because 'in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *United States v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020) (quoting *Kimbrough v. United States*, 552 U.S. 85, 109 (2007)). We may apply a presumption of reasonableness where, as in the instant case, the district court sentences Defendant within his correctly calculated Guidelines range. *Gall*, 552 U.S. at 51.

Defendant raises two substantive reasonableness challenges to his presumptively reasonable sentence. Neither has merit. First, Defendant appears to argue that the district court should have given more weight to his history and characteristics, pursuant to § 3553(a)(1). But the district court considered this factor during sentencing and explicitly made note of Defendant's tumultuous upbringing and past. We cannot reverse the district court's sentence simply because we "might reasonably have concluded that a different sentence was appropriate." *Id.* at 51. So long as "the district court considered and weighed all relevant § 3553(a) factors, . . . the defendant bears 'a much greater burden in arguing that the court has given an unreasonable amount of weight to any particular one.'" *United States v. Zabel*, 35 F.4th 493, 508 (6th Cir. 2022) (quoting *Zobel*,

696 F.3d at 571). Defendant fails to meet this burden, so we find that the district court did not abuse its discretion when it weighed Defendant's history and characteristics.

Finally, Defendant argues that the district court failed to consider the sentencing disparity between the sentences that he and his co-conspirator, Norman, received, pursuant to § 3553(a)(6). This argument is flawed in two respects. We have explained that § 3553(a)(6) "'is concerned with national disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct,' not 'disparities between' codefendants." *United States v. Thomas*, 933 F.3d 605, 613 (6th Cir. 2019) (quoting *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007)). Further, Defendant and Norman have dissimilar criminal records. Norman was sentenced under a criminal history category III whereas Defendant was sentenced under a higher criminal history category IV. Accordingly, we do not find that Defendant's sentence was substantively unreasonable.

### III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of the district court.